IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TAYLOR BURKE, as Special Administrator to the Estate of LAWANDA WARD, deceased, <br><br> Plaintiff, <br><br> v. <br><br> (1) CITY OF TULSA, OKLAHOMA <br> (2) G4S SECURE SOLUTIONS (USA), INC. <br> (3) Christa Kaler <br> (4) Sarah Kessler <br> (5) Baleigh Napier <br> (6) Moises Izquierdo Santos <br> (7) Matthew Willis <br> (8) J. Besson <br> (9) M. Forbes <br> (10) B. Frederick <br> (11) E. Okoduwa <br> (12) S. Whitworth <br><br> Defendants. | Case No. 21-CV-131-JED-SH <br><br> JURY TRIAL DEMANDED <br><br> ATTORNEY LIEN CLAIMED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
G4S SECURE SOLUTIONS (USA), INC'S MOTION TO DISMISS**

COMES NOW, Plaintiff Taylor Burke ("Plaintiff"), as Special Administrator of the Estate of Lawanda Ward ("Ms. Ward"), deceased, and respectfully submits his Response in Opposition to Defendant G4S Secure Solutions (USA), Inc's ("G4S") Amended[1] Motion to Dismiss (Dkt. #25), as follows:

---

[1] G4S filed a Partial Motion to Dismiss (Dkt. #24) on June 3, 2021 before filing its Amended Motion to Dismiss (Dkt. #25) later that same day. While G4S does not clarify what is different between the two filings, it appears that only the heading of the Amended MTD changed. *See* Dkt. ## 24, 25.

1

## Introductory Statement

G4S is a national security services corporation. Pursuant to a contract with the Defendant City of Tulsa, G4S staffs and operates the Tulsa Municipal Jail ("Jail"). As alleged in the Complaint, Ms. Ward needlessly suffered – and ultimately died – at the Jail after responsible G4S employees disregarded known, obvious, and substantial risks to Ms. Ward's health and safety. *See, generally*, Dkt. #2.

As alleged, Ms. Ward, a pretrial detainee, was booked into the Jail on January 2, 2020. During booking, Ms. Ward informed G4S employees that she could barely walk or stand up straight, that she wasn't feeling well, and that she needed to see a medical professional. Indeed, Ms. Ward indicated on her medical questionnaire that she suffered from high blood pressure, lupus, and depression. Over a span of four (4) days, Ms. Ward repeatedly begged for medical treatment as her condition deteriorated, but G4S employees at the Jail ignored her pleas for help as well as her obviously serious – and worsening – symptoms. On January 6, 2020, Ms. Ward was found unresponsive in her cell. Once discovered by Jail staff, Ms. Ward was transported to the hospital, but it was too late, and she was pronounced dead shortly after arrival. Not once during her four days at the Jail did Ms. Ward receive any medical attention whatsoever.

Plaintiff has brought both State law negligence and federal constitutional claims against Defendant G4S. Plaintiff's constitutional claims against G4S are asserted under a municipal liability/*Monell* theory. Plaintiff has plausibly alleged that there is an affirmative link between the deprivation of Ms. Ward's constitutional rights and G4S policies, practices and/or customs at the Jail which G4S promulgated, created, implemented and/or possessed responsibility for. G4S's sole argument for the dismissal of Plaintiff's municipal liability claim against is that G4S does not have "the final decision-making authority" for the Jail. However, as this Court and the other federal

district courts in Oklahoma have repeatedly recognized, "[a] municipal entity may be liable where its policy is the moving force behind the denial of a constitutional right, *see Monell [v. New York City Dept. of Social Servs.],* 436 U.S. [658,] 694 [(1977)], 98 S.Ct. 2018, **or** for an action by an authority with final policymaking authority, *see Pembaur [v. City of Cincinnati,* 475 U.S. 469 (1986)" *Revilla v. Glanz,* 8 F. Supp. 3d 1336, 1339 (N.D. Okla. 2014) (emphasis added). *See also Birdwell v. Glanz,* No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *6 (N.D. Okla. May 6, 2016); *Buchanan v. Turn Key Health Clinics, LLC, et al.,* Case No. 18-CV-171-RAW (E.D. Okla. February 27, 2019). *See Buchanan* Order (Ex. 1).

Because Plaintiff has alleged that G4S's failure to train and supervise its employees was the "moving force" behind the denial of Ms. Ward's constitutional rights, his claims are brought pursuant to *Monell.* Thus, Plaintiff was not required to allege that G4S had "final policymaking authority." G4S has provided this Court with no basis to dismiss Plaintiff's federal claims against G4S. Additionally, G4S, as a private corporation, is not subject to immunity under the Oklahoma Governmental Tort Claims Act, and therefore Plaintiff's negligence claim should not be dismissed. Defendant's Amended Motion to Dismiss (Dkt. #25) is without merit and should be denied.

## **Summary of Allegations Concerning Ms. Ward**

In order to assist this Court with its analysis of G4S's Motion to Dismiss, Plaintiff provides the following summary of allegations concerning the treatment of Ms. Ward. To wit, Plaintiff has alleged, *inter alia*:

- ∎ On or about January 2, 2020, at approximately 6:30 p.m., Ms. Lawanda Ward was brought to the Tulsa Municipal Jail as a pre-trial detainee.

- ∎ At this time Defendant Frederick assisted Lawanda in completing a medical questionnaire. While she was completing it, the arresting officer informed Defendants Frederick and Okoduwa that Ms. Ward had apparently swallowed narcotics approximately two hours before her arrival at the Jail and that Ms. Ward was "making every possible attempt not to come to jail."

3

- Ms. Ward informed Defendant Okoduwa she could barely walk or stand up straight, and that she wasn't feeling well and requested an assessment by a medical professional. However, there was no medical professional available at the Jail.

- On her medical questionnaire, Ms. Ward indicated that she suffered from high blood pressure and lupus, and that she was taking prescription medication for high blood pressure and depression at the time of her booking.

- At approximately 8:00 a.m. on January 3, 2020, Defendant Besson was "sitting at [their] post in control" when Lawanda continuously pushed the intercom button. According to Besson, they could hear Lawanda repeatedly yelling "help" from her cell. Through the intercom, Besson asked Lawanda what she needed, but she continued to yell for help and sit in front of her cell door. "After a while," according to Besson, she stopped, went to her bunk, and fell asleep. No further action was taken by Defendant Besson.

- Sometime on the morning of January 4, 2020, Defendant Whitworth assisted Ms. Ward in using the telephone to call her sister. Whitworth told Lawanda to tell her sister to bring Lawanda's prescription medication to the Jail. After speaking to her sister, Lawanda informed Whitworth that her sister could not bring the medication to the Jail *and that the detention officers should take her to the hospital instead.* Whitworth replied by telling Ward "her family just needed to step up and bring her medications." At this time Ward tried to make another phone call but could not reach anyone. Whitworth then wheeled Ward back to her cell. During this time, Ward told Whitworth that she was a diabetic and had not taken her insulin in three (3) days. Whitworth explained to Ward that the Jail staff had no insulin to give her and that *no medical staff was present at the facility*. Whitworth again asked Ward why her family would not bring her medications to the Jail. Ward replied that they "just wanted [Jail staff] to send her to the hospital."

- On January 4, 2020, Defendant Forbes witnessed Ms. Ward exclaiming that "she couldn't breathe" as she attempted to use the telephone.

- Additionally on January 4, 2020, Defendant Kessler reported that Ward would exclaim how she "couldn't breathe" repeatedly to Kessler and Defendants Forbes and Whitworth. However, Kessler stated that Ward "did not appear to struggle to breath [sic] in any way."

- Also on January 4, 2020, Defendant Napier witnessed Lawanda attempting to get the attention of EMSA paramedics, who were in the female ward of the Jail for another inmate, by screaming "Help! Help! EMSA, help me!" Defendant Napier's supervisor, Defendant Forbes, instructed Napier to take Ward back to her cell. Napier complied with this order and ignored the pleas of Ms. Ward.

- During his shifts from January 4, 2020 through January 6, 2020, Defendant Willis reported multiple instances of Ms. Ward asking for officers' attention, staring blankly after being asked a question, acting erratically in her cell, and refusing to eat. Not once did Willis

attempt to inquire about Lawanda's medical state aside from asking "if she was okay," to which she would not respond.

- On January 6, 2020, at approximately 8:30 a.m., Lawanda was found unresponsive in her cell. She was not breathing and did not have a detectable heartbeat. After several attempts to revive her using CPR and an AED device, she was transported to a hospital where she was later pronounced dead.

- An autopsy report by the Office of the Oklahoma Chief Medical Examiner (OCME) concluded the cause of her death was heart disease and cocaine toxicity, with pneumonia and chronic obstructive pulmonary disease also contributing.
- As multiple members of the Jail staff reported, Ms. Ward complained about difficulty breathing and feeling discomfort; displayed wildly erratic behavior such as yelling and screaming profanities for no apparent reason, appearing unresponsive and/or confused when spoken to, refusing to eat, and staring at one spot for hours; and at many moments pinched and touched her legs, ankles, and feet most likely due to swelling caused by her ailments. Additionally, multiple Jail staff members knew Ms. Ward was prescribed medications for serious medical conditions, and she even relayed her family's request that she be taken to a hospital, to no avail. The closest action Jail staff took to addressing the medical needs of Ms. Ward was to ask her if she was okay, to which she would normally not even reply. Further, Jail staff regularly ignored Ms. Ward's specific insistences regarding her difficulty breathing due to no reason other than Ms. Ward's ostensible ability to speak.

- Upon information and belief, Ms. Ward was *never* treated, seen, or evaluated by a medical professional during her time at the Jail.

- It is clear Jail staff were deliberately indifferent to Ms. Ward's pleas for help, overall behavior, and clear medical conditions. This wanton disregard for Lawanda's wellbeing is evidenced by certain reports and episodes including: intake officers being told that Ms. Ward was "making every possible attempt not to come to jail"; taking Ms. Ward back to her cell when she tried to get the attention and help of EMSA paramedics; noting condescendingly in incident reports that Ms. Ward used a wheelchair but that she was observed going to the bathroom on her own; and detention officers telling each other that Ms. Ward was "cookoo" and "with every new face of detention staff she sees, [Ms. Ward] complains of another or different ailment." It is abundantly clear that Jail staff disregarded recklessly Ms. Ward's conditions while she was incarcerated, and attributed her behavior to simple attempts to either get attention and/or seek removal from the Jail. Most unfortunately, these reckless assumptions led to Lawanda's suffering and death.

- Defendant G4S is responsible for staffing the Tulsa Municipal Jail. Defendants Kaler, Kessler, Napier, Izquierdo Santos, Willis, Besson, Frederick, Okoduwa, and Whitworth were employed by G4S to oversee inmates at the Jail. As previously admitted by the employees, there was no medical staff present whatsoever to detect, respond, or otherwise oversee the health and wellbeing of those incarcerated. As the staffing agency and employer of the Jail staff, G4S had a duty not only to ensure inmates were properly cared for, but for

employees to be adequately prepared to deal with issues pertaining to inmate safety and health as they arose.

- On information and belief, G4S has utterly failed to train and supervise detention officers with respect to recognizing the signs and symptoms of serious medical conditions, especially COPD, heart disease, cocaine toxicity, and pneumonia, from harm.

- On information and belief, G4S has utterly failed to train and supervise detention officers with how to protect detainees with serious medical conditions, especially COPD, heart disease, cocaine toxicity, and pneumonia, from harm.

- G4S should have known that this failure to train and supervise was substantially certain to result in Constitutional violations.

- The failure to train and supervise provided by Defendant G4S resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant G4S and were also moving forces behind the violation of Lawanda's civil rights and the resulting injuries alleged herein.

- As a direct result of G4S's unlawful conduct, Lawanda suffered serious actual physical and emotional injuries, death, and other damages and losses as described herein entitling Plaintiff to compensatory and special damages, in amounts to be determined at trial.

- G4S owes a duty to arrestees/detainees, including Ms. Ward, to use reasonable care to assure those arrestees/detainees in need of medical attention, like Lawanda, are provided with appropriate and timely medical attention.

- G4S breached that duty by wholly failing to assure that Lawanda received prompt and adequate medical treatment of her obvious medical needs.

- As a direct and proximate cause of G4S's negligence, Lawanda experienced physical pain, severe emotional distress, mental anguish, and the damages alleged herein.

- At all pertinent times, G4S was acting within the scope of their duty as operators of the Tulsa Municipal Jail.

- G4S is vicariously liable for the negligence of its employees and agents, acting within the scope of their employment, including Defendants Kaler, Kessler, Napier, Izquierdo Santos, Willis, Besson, Frederick, Okoduwa, Whitworth, and Forbes.

Complaint (Dkt. #2) at ¶¶ 19-20, 22-24, 26-32, 34-36, 40, 58-62, 64-68.

## **Standard of Review**

When deciding a Rule 12(b) motion to dismiss, courts are "'limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint ....'" *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008) (quoting *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995)). In conducting this assessment, courts must "'accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party.'" *Archuleta,* 523 F.3d at 1283 (quoting *Moya v. Schollenbarger,* 465 F.3d 444 at 455 (10th Cir. 2006)).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), the United States Supreme Court held that the complaint must contain "enough facts to state a claim to relief that is *plausible* on its face" (emphasis added). "The plausibility requirement 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of the conduct necessary to make out the claim." *Burke v. Regalado,* No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *2 (N.D. Okla. Mar. 26, 2019) (*quoting Twombly,* 550 U.S. at 556 (2007). The Tenth Circuit has observed that the *Twombly* "opinion seeks to find a middle ground between 'heightened fact pleading,' . . . and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 547 and 555). As the *Robbins* Court reasoned:

> "[P]lausible" cannot mean 'likely to be true.' Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007)]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins*, 519 F.3d at 1247.

It is significant that Plaintiff's federal claims against G4S are based on a municipal liability theory. Even after *Twombly* and *Iqbal*, federal courts have applied a laxed standard when reviewing municipal liability claims at the motion to dismiss stage. In *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011), the court articulated a method to reconcile the *Iqbal-Twombly* standard with the Supreme Court's prior rejection of a heightened pleading standard for § 1983 claims against municipalities set out in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Accepting that *Iqbal* instructs courts to utilize judicial experience and common sense when determining whether a complaint states a plausible claim for relief and further recognizing that in the municipal liability context, the *Thomas* Court observed that "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery," and concluded that ***"only minimal factual allegations should be required at the motion to dismiss stage."*** *Thomas*, 800 F. Supp. 2d at 842-43 (emphasis added). The *Thomas* decision struck the appropriate balance of "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* at 844.

Other courts, including the Northern District of Oklahoma, have followed this commonsense approach to the factual specificity required for municipal liability claims. *See, e.g., Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012); *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015); *Pena v. Dallas Cnty. Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *10 n.16 (N.D. Tex. June 26, 2013); *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011); *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2016

WL 8672774, at *5–6 (N.D. Tex. Sept. 9, 2016), *report and recommendation adopted as modified sub nom. E.G. v. Bond,* No. 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017). In *Gooding*, this Court "agree[d] with the approach … taken in *Taylor v. RED Development, LLC,* No. 11–2178–JWL, 2011 WL 3880881 (D.Kan. Aug. 31, 2011), wherein the court required more than 'boilerplate allegations' of a municipal policy, but ***did not 'deman[d] specific facts that prove the existence of a policy' when a plaintiff would not have access to such information before discovery.***" *Gooding,* 838 F. Supp. 2d at 1241 (also citing *Thomas,* 800 F.Supp.2d at 842–43) (emphasis added).

The allegations against G4S contained in the Complaint easily meet this "plausibility" standard.

## Arguments and Authorities

### A. Plaintiff's Complaint States Plausible § 1983 Claims against G4S Under a Municipal/*Monell* Liability Theory

G4S's primary argument for dismissal of Plaintiff's federal claims has been rejected by this Court (and myriad other federal courts, including the Eastern and Western Districts of Oklahoma and Tenth Circuit Court of Appeals) on numerous occasions. Citing to *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), G4S asserts that Plaintiff's constitutional claims (brought pursuant to 42 U.S.C. § 1983) must be dismissed because Plaintiff failed to allege that G4S has final policymaking authority. Dkt. #25 at 3-5. However, as this Court has previously recognized, "[a] municipal entity may be liable where its policy is the moving force behind the denial of a constitutional right, *see Monell,* 436 U.S. at 694, 98 S.Ct. 2018, **or** for an action by an authority with final policymaking authority, *see Pembaur* …." *Revilla v. Glanz,* 8 F. Supp. 3d 1336, 1339 (N.D. Okla. 2014) (emphasis added). *See also Birdwell v. Glanz,* No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *6 (N.D. Okla. May 6, 2016); *Seamons v. Snow,* 206 F.3d 1021, 1029 (10th Cir. 2000) ("[I]t must be shown that the

unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, **or** were carried out by an official with final policy making authority with respect to the challenged action."); *Danford v. DeHerrera*, 2005 WL 1770882 (D. Colo. July 26, 2005) ("[T]o survive a motion to dismiss, Plaintiff must assert a short and plain statement alleging that Defendant CCA violated his constitutional rights through (1) an official policy or custom of Defendant CCA; **or** (2) a single act which inflicts constitutional injury by an official with final policy making authority with respect to the challenged action."); *Regelman v. Weber*, 2011 WL 1085685 (W.D. Pa. Mar. 21, 2011) ("Plaintiff must show that a constitutional deprivation resulted from an official custom or policy **or**, alternatively, from the actions of an official with 'final authority to establish municipal policy.'").[2]

Here, Plaintiff's claims against G4S are not based on the Supreme Court's decision in *Pembaur*, but are based upon *Monell* and its progeny. Because Plaintiff is proceeding pursuant to *Monell*, he need not allege nor establish that G4S has final policymaking authority for the City of Tulsa. The issue here is whether the policies or customs G4S created, maintained, implemented and/or carried out were a moving force behind the Constitutional injuries. Plaintiff has plausibly alleged such a claim against G4S under *Monell*.

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1977) and subsequent cases, the Supreme Court has consistently "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

A municipal policy or custom may take the form of:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express

---

[2] This point of law is so well-established that G4S's argument can rightfully be described as "frivolous."

10

> municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted).

It is well-established that "when private individuals or groups" like G4S "are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton,* 382 U.S. 296, 299 (1966). As the Tenth Circuit has reasoned, where a corporate defendant acts "for the government in carrying out a government program in accordance with government regulations, [the corporate defendant is] a person 'acting under color of state law.'" *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216, n. 13 (10th Cir. 2003).

Further, "[a]lthough the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, case law from [the Tenth Circuit] and other circuits *has extended the Monell doctrine to <u>private</u> § 1983 defendants.*" *Dubbs,* 336 F.3d 1216 (citations omitted) (emphasis added).

Here, Plaintiff has adequately alleged that, in the realm of staffing and operating the Tulsa Municipal Jail, G4S was, for the purposes of § 1983, the functional equivalent of the City of Tulsa. *See, e.g.,* Dkt. #2 at ¶ 40. Plaintiff additionally alleges that the underlying constitutional violations resulted from official policies, customs and/or practices which G4S had responsibility for creating, maintaining and/or implementing. *See, e.g.,* Dkt. #2 at ¶¶ 57-62.

Indeed, Plaintiff has alleged that G4S has: utterly failed to train and supervise detention officers with respect to recognizing the signs and symptoms of serious medical conditions, especially COPD, heart disease, cocaine toxicity, and pneumonia; and utterly failed to train and supervise

11

detention officers with how to protect detainees with serious medical conditions, especially COPD, heart disease, cocaine toxicity, and pneumonia, from harm. *See* Dkt. #2 at ¶¶ 58-59. Plaintiff has further alleged that the "failure to train and supervise provided by Defendant G4S resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant G4S and were also moving forces behind the violation of Lawanda's civil rights and the resulting injuries alleged[.]" *Id.* at ¶ 61.

G4S meagerly argues that Plaintiff's allegations "lack the requisite specificity[]" and that Plaintiff has failed to "point to any specific policy or procedure promulgated exclusively by G4S that led to the intentional deprivation of necessary medical care to Ward which caused her death." MTD (Dkt. #25) at 5. These arguments are also without merit. As discussed, *supra*, Plaintiff has identified specific areas in which G4S has failed to adequately train and supervise its employees and how those failures are causally connected to the violation of Ms. Ward's rights. *See* Dkt. #2 at ¶¶ 58-61. Plainly, the alleged failure to train and supervise detention officers with respect to recognizing the signs and symptoms of serious medical conditions, especially COPD, heart disease, cocaine toxicity, and pneumonia, is causally connected to Mr. Ward's pain and suffering -- from these same conditions -- and her demise. *See id.*

Plaintiff's allegations are sufficiently specific at the pleadings stage before Plaintiff has had an opportunity to engage in discovery. In *McNeal v. Zobrist*, 365 F.Supp.2d 1166 (D.Kan. 2005), the United States District Court for the District of Kansas succinctly explained a plaintiff's burden in alleging a failure to train claim at the pleading stage:

> The court concludes that Plaintiff's Second Amended Complaint states a § 1983 claim against the Board members. Although not set forth with precision, Plaintiff alleges that the Board members, pursuant to official policy or custom, intentionally and with deliberate indifference failed to instruct and supervise Defendant Praschak and Officer Pickens in the use of deadly force. *See City of Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. 1197 (recognizing that the need to train officers in the use of deadly force is so obvious that the failure to do so could be characterized as deliberate

> indifference sufficient to impose municipal liability); *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir.2003) (reciting the requirements a plaintiff must show to prevail on a claim that a municipality failed to train its officers in the use of force). ***A motion to dismiss is not the proper device to determine whether Plaintiff can satisfy the higher standards of proof necessary to hold a municipality liable under § 1983. At this stage of the litigation, Plaintiff may pursue a § 1983 failure to train claim against the Board members***. Accordingly, the Board members' motion to dismiss on this basis is denied.

*McNeal*, 365 F.Supp.2d at 1173-74 (emphasis added). At a minimum, Plaintiff has alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the conduct necessary to make out the claim." *Burke*, 2019 WL 1371144, at *2.

Plaintiff has alleged a plausible municipal liability claim against G4S. Plaintiff's federal claims against G4S should not be dismissed.

### B. Defendant is *Not* Entitled to Tort Immunity Under the Oklahoma Governmental Tort Claims Act

The Oklahoma Governmental Tort Claims Act ("GTCA") is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *See, e.g., Fuller v. Odom*, 741 P.2d 449, 451 (Okla. 1987); *see also* Okla. Stat. tit. 51, § 153(B). In the GTCA, Okla. Stat. tit. 51, § 152.1(A), the legislature adopted and reaffirmed sovereign immunity from State Law Claims for the State, its political subdivisions, and all employees acting within the scope of their employment. This immunity is subject to a limited waiver to the extent and the manner specifically provided for by the provisions of the other sections of the Act. Okla. Stat. tit. 51, § 152.1(B).

Private corporations, like G4S, have previously argued that they are immune from liability under the GTCA as an "agency" of the State or subdivision. Such arguments have been soundly rejected. As a private corporate entity, G4S is not protected from liability in tort. *See, e.g., Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.*, 472 F. Supp. 2d 1294, 1299 (W.D. Okla. 2007); *Arnold*

*v. Cornell Companies, Inc.,* 2008 WL 4816507, *2 (W.D. Okla. Oct. 29, 2008); *Sullins v. Am. Med. Response of Oklahoma, Inc.,* 2001 OK 20, 23 P.3d 259, 264 (Okla. 2001).

Further, G4S is not immune from liability as an "employee" of the State of Oklahoma, or an employee of a political subdivision. As alleged in the Complaint, G4S is "a national corporation headquartered in Jupiter, Florida. Defendant G4S staffs the Tulsa Municipal Jail." Dkt. #2 at ¶ 3. Plaintiff further alleges that all of the individual Defendants (other than Defendant Forbes) were, at all pertinent times, employees of G4S. *See id.* at ¶¶ 4-9, 11-13. G4S is not an "employee" as defined by 51 Okla. Stat. § 152(7). The GTCA expressly excludes "a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor" from the definition of "employee." 51 Okla. Stat. § 152(7)(a)(1).

This Court addressed similar issues when ruling on a private medical provider's motion to dismiss filed in another recent case litigated by Plaintiff's counsel. *See Revilla v. Glanz,* 8 F. Supp. 3d 1336, 1344–45 (N.D. Okla. 2014). There, the Court found that "without complete factual information and in the absence of any legal authority that dictates the application of § 152(7)(b)(7) to the individual Healthcare Defendants (or to CHC) …, it is premature to determine whether § 152(7)(b)(7) covers CHC's employees and/or CHC." *Id.* at 1345. Similarly, in *Briggs,* the Western District of Oklahoma reasoned that, "at this stage of the litigation and absent a complete presentation of the evidence, the Court finds that EO Youth Services does not assume the status of a state agency, the liability of which is 'subject to the limitations and exceptions specified in th[e] Act.' 51 O.S. § 153(A)." *Briggs,* 427 F.Supp.2d at 1299. The court further held that "[a]bsent proof of the facts deemed relevant by the parties, the status of EO Youth Services and Bonner as employees or as an independent contractor and the employee of an independent contractor, respectively, cannot be decided at this stage of the litigation." *Id.* At the very least, there is an incomplete factual record and lack of legal authority dictating the application of § 152(7), such that

it is premature to determine whether G4S is immune from tort liability under the GTCA. *See, e.g., Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 699 F. Supp. 251, 253 (N.D. Okla. 1988) ("[W]here material issues of fact are unresolved, a motion to dismiss should not be granted."). Plaintiff's State law claims against G4S should not be dismissed.

WHEREFORE, premises considered, Plaintiff respectfully requests that the Court deny Defendant G4S's Amended Motion to Dismiss (Dkt. #25).

Respectfully submitted,

/s/Robert M. Blakemore
Daniel E. Smolen, OBA#19943
Robert M. Blakemore, OBA #18656
SMOLEN & ROYTMAN
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Robert M. Blakemore