# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. TAYLOR BURKE, as Special Administrator to the Estate of LAWANDA WARD, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>1. CITY OF TULSA, OKLAHOMA;<br>2. G4S SECURE SOLUTIONS (USA) INC.;<br>3. CHRISTA KALER;<br>4. SARAH KESSLER;<br>5. BALEIGH NAPIER;<br>6. MOISES IZQUIERDO SANTOS;<br>7. MATTHEW WILLIS;<br>8. J. BESSON;<br>9. M. FORBES;<br>10. B. FREDERICK;<br>11. E. OKODUWA; and<br>12. S. WHITWORTH;<br><br>Defendants. | Case No.: 4:21-cv-00131-JED-SH |

### DEFENDANT G4S SECURE SOLUTION (USA), INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendants G4S Secure Solutions (USA), Inc. ("G4S" or "the company"), Christa Kaler, Sarah Kessler, Baleigh Napier, Moises Izquierdo Santos, Matthew Willis, J. Besson, B. Frederick, E. Okoduwa, and S. Whitworth (collectively, the "Defendants"), respectfully move this Court to dismiss all claims for relief of Taylor Burke, as Special Administrator of the Estate of Lawanda Ward, ("Plaintiff") against them set forth in the Amended Complaint [Dkt. 38], under Fed. R. Civ. P. 12(b)(6). In support of this motion, the Defendants submit:

### INTRODUCTION

G4S was contracted with the City of Tulsa to staff and operate the Jail, a "lockup facility," to include receiving, processing, housing, monitoring, preparing for court, and

releasing inmates, as needed. [*See* Dkt. 38, at ¶ 19; Agreement for Lockup Facility Operations and Management Services, Ex. 1.¹] The scope of the company's services were set forth in the agreement with the City of Tulsa. G4S was to operate the jail consistent with the City of Tulsa Jail Policies and Procedures, Federal and State Statutes, Federal Regulations, and City, state, or federal published procedures, directives and announcements.  Regarding assessing whether an individual is "medically fit to be accepted into the [jail] without further medical attention," G4S staff was required to "base its determination of fitness using the City of Tulsa Municipal Jail Medical Intake Guidelines and the City of Tulsa Municipal Jail Medical Screening Questionnaire." All services provided by G4S are also to comply with those of the Oklahoma State Department of Health Jail Standards.

Plaintiff's claims stem from the death of Lawanda Ward on January 6, 2020, while she was an inmate at the Tulsa Municipal Jail. The Amended Complaint alleges that Ward was arrested and brought to the jail as a pretrial detainee on January 2, 2020. During processing, jail staff was notified that she had purportedly swallowed narcotics two hours prior and that she was "making every possible attempt not to come to jail." At the time of her arrest and before being booked into the jail, Ward was evaluated by a paramedic who elected not to take her to the hospital. During booking, Ward stated in her medical questionnaire that she suffered from high blood pressure and lupus, and that she was taking medication for her blood pressure and depression. Ward did not indicate that she was diabetic.²

Over the next four days Ward made various complaints, requests, and demands of

---

¹ In reviewing a motion to dismiss, the trial court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" without converting the motion to a motion for summary judgment. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 947 (10th Cir. 2002).

² Ward's reported cause of death was heart diseases and cocaine toxicity, with pneumonia and chronic obstructive pulmonary disease as contributing factors.

and to the jail staff. Each time, jail staff responded to her complaints. Ward, however, blankly stared, acted erratically, or altogether refused to respond to inquiries about her condition from jail staff. The day after being booked into the jail, jail staff even contacted the court to see whether Ward's hearing could be expedited. The court denied the request. Further, on January 4, 2020, jail staff assisted Ward with contacting her sister to request that she bring her medication to the jail. Ward never asked that her medication be brought to the jail, and, instead, she asked only that her sister bring money to get her out of jail.

On January 6, 2020, jail staff observed Ward moving in her cell during routine inspection. Less than ten minutes later, she was found unresponsive in her cell. Jail staff immediately called 9-1-1 and began CPR utilizing an automated external defibrillator (AED). Tulsa Fire Department arrived shortly thereafter and took over resuscitative efforts of Ward until EMSA arrived on the scene. EMSA transported Ward to a nearby hospital where she was pronounced dead shortly thereafter. Ward's reported cause of death was heart disease and cocaine toxicity, with pneumonia and chronic obstructive pulmonary disease being contributing factors.

Plaintiff asserts against G4S both a federal constitutional claim under a municipal liability theory and a negligence claim under Oklahoma law. Specifically, Plaintiff claims there is an affirmative link between Ward's death and the policies, practices and customs which G4S promulgated, created, implemented or for which it was otherwise responsible. It is argued there were such gross deficiencies in medical staffing and procedures at the jail that Ward was effectively denied treatment and that G4S failed to adequately train and supervise its employees in recognizing the signs and symptoms of serious medical conditions. Regarding G4S's employees, the jail staff, Plaintiff contends that by failing to

3

obtain for Ward immediate and emergent evaluation and treatment from a physician, each was deliberately indifferent to the "danger of serious harm" she faced, given her "serious and emergent medical needs." In the case of both G4S and its employees, however, Plaintiff's Amended Complaint still fails to assert sufficient facts to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957)). Courts must view plaintiff's well pled facts in the light most favorable to the nonmoving party. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). However, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. The rule in *Twombly* has been adopted and applied by the Tenth Circuit. *See Ton Services, Inc. v. Qwest Corporation*, 493 F.3d 1225, 1236 (10th Cir. 2007) (noting the Court's articulation of a new plausibility standard in *Twombly*); *see also Alvarado v. KOB-TV*, 493 F.3d 1210, 1215 (10th Cir. 2007) (adopting the plausibility standard).

The court need not credit bald assertions or legal conclusions. *Anspach v. Philadelphia Department of Public Health*, 503 F.3d 256, 260 (3rd Cir. 2007) (citation omitted). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id*. (citation omitted). A "[p]laintiff's obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *League of United Latin American Citizens v. Bredensen*,

500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1964-65).

The Court must ask whether there is plausibility in the complaint when addressing the issue of sufficient factual pleadings to overcome a Rule 12(b)(6) Motion to Dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Christy Sports, L.L.C. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009)). Indeed, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1960). It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where the complaint pleads only facts that do not permit the court to infer more than the mere possibility of misconduct, such complaint has not shown that the plaintiff is entitled to relief. *Id.* at 1950; *see also* FED. R. CIV. P. 8(a)(2). Further, where a complaint contains no more than mere legal conclusions, such conclusions are not entitled to a presumption of truth. *Iqbal*, 129 S.Ct. at 1949-50. Rather, a plaintiff must allege enough factual matter which, taken as true, suggest the legal conclusion plaintiff asserts. *Id.* at 1950. While the pleading standard of Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* at 1949.

## ARGUMENTS AND AUTHORITIES

I. <u>Plaintiff fails to state a claim for relief against G4S for alleged violations of Ward's Fourteenth Amendment Rights.</u>

As the Court outlined in its Order [Dkt. 37], Plaintiff alleges G4S is liable under the

theories of municipal liability set forth in the *Monell*[3] and *Canton*[4] cases. The Court is correct because G4S does not challenge that it was acting under the color of state law in staffing the jail. However, under *Monell* and *Canton*, Plaintiff's amendments to its original Complaint fail to address the deficiencies identified by the Court. [Dkt. 37.] Namely, the Amended Complaint fails to identify the existence of an official policy or custom that bears a direct causal link to Ward's death.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell, supra*, n.2 at 694. To succeed on a constitutional claim against a municipality, a plaintiff must demonstrate (1) the existence of an official policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury alleged, and (3) deliberate indifference by the municipality. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013). The official policy or custom must be the "moving force" behind the alleged constitutional violation. *Monell, supra*, n.2 at 694. Plaintiff has not met this burden, and this action should be dismissed for failure state a claim upon which relief may be granted.

    A. Monell Doctrine

The Amended Complaint lacks the requisite specificity needed to survive a motion to dismiss. Plaintiff continues to rely on the same conclusory allegations as before, which the Court deemed insufficient to state a claim for relief.

The Amended Complaint simply expounds upon the initial, deficient allegations

---

[3] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).
[4] *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

against G4S, its employees, and the City of Tulsa - all without curing the principal defect identified by this Court: Plaintiff identifies no policy or procedure of G4S that bears a direct causal link to Ward's death. Instead, Plaintiff continues to allege simply that "[t]he jail failed to comply with essential standards for receiving screening of the National Commission on Correctional Health Care (NCCHC)." The NCCHC is a third-party non-profit organization. Plaintiff does not tie NCCHC "standards" to any standards for a constitutional claim, and, notably, the NCCHC is not a governing body with regulatory power or authority. Accordingly, the addition of paragraphs 42 through 52 to the Amended Complaint neither add to nor clarify this claim, and, again, point to no specific policy of G4S that might give rise to liability in the case of Ward.

Plaintiff points to the services contract between G4S and the City of Tulsa as evidence of a policy or custom where inmates were denied medical care. This is untrue, however, as Section 3.4 of the agreement makes clear that regarding medical care and procedure G4S was to follow the City of Tulsa Municipal Jail Medical Intake Guidelines and complete the City of Tulsa Municipal Jail Medical Screening Questionnaire for each new detainee. G4S lacked the discretion to create its own policy about the identification of medical issues with detainees. Further, as addressed filed by the City of Tulsa [Dkt. 44], the jail, as a lockup facility, is required to meet the standards of the Oklahoma Administrative Code §310:670-3-1. This regulation does not provide for or require staffing lockup facilities with permanent licensed medical care, as Plaintiff believes was needed. The actions of G4S and its employees were and have been consistent with the City of Tulsa Jail Policies and Procedures, Federal and State Statutes, Federal Regulations, and City, state, or federal published procedures, directives and announcements, under the terms of its contract with the City of Tulsa.

7

Accordingly, Plaintiff's claim against G4S under *Monell* should be dismissed.

  B. *Canton Doctrine (Failure to Train)*

The Amended Complaint further alleges that G4S failed to train and supervise jail staff to recognize the signs and symptoms of serious medical conditions.

In articulating the high burden on a plaintiff alleging a violation of his or her constitutional rights by a municipality, or private entity acting under color of law, for failure to train, the Supreme Court of the United States provided:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). Stating further, "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown.*, 520 U.S. 397, 410 (1997)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 62 (citing *Bryan Cty.*, 520 U.S. at 409). However, in *Canton*, the Court left open the possibility that "in a narrow range of circumstances" deliberate indifference may be proven absent a pattern of similar violations. *Connick*, 563 U.S. at 63 (citing *Bryan Cty.*, 520 U.S. at 409). To

8

illustrate, the Court in *Canton* used the example of a city arming its police force with firearms, knowing "to a moral certainty" that their officers will be required to apprehend fleeing felons in the course of their duties. *Canton*, 489 U.S. at 390, n.10. "Thus, the need to train officers in the constitutional limitations on the use of deadly force [ ] can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* (internal citation omitted).

When determining whether a municipality may be held liable for failing to train its employees, "the focus must be on adequacy of the training program in relation to the task the particular officers must perform." *Id.* at 390. It is not enough to allege that an officer may be "unsatisfactorily trained." The officer's shortcomings may have been the result of other factors, such as a sound training program negligently administered. *Id.* at 390-91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* Finally, the Court remarked that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 392 (citing *Oklahoma City v. Tuttle,* 471 U.S. at 823 (plurality opinion of REHNQUIST, J.)).

Here, the Amended Complaint lacks sufficient factual detail to support a failure to train claim against G4S. Plaintiff appears to allege that this case is one that falls within the narrow range of circumstances where deliberate indifference may arise from a single incident, as neither notice nor pattern of conduct are alleged. However, regarding the

amendments to the pleading, none of the additional allegations found in paragraphs 42 through 51 speak at all to G4S's training of jail staff. The jail staff was sufficiently trained for their necessary job duties as provided for in G4S's service contract with the City of Tulsa. They provided emergent medical resuscitative intervention to Ward after it became apparent there was an issue, and they promptly contacted emergency medical crews who arrived on scene within ten minutes. Plaintiff's allegations amount to the factual scenario the *Canton* Court cautioned against - that Ward's death could have been avoided if there had been training on a particularized circumstance or issue.  Plaintiff's allegations should be dismissed for failure to state a claim upon which relief may be granted.

II. <u>Plaintiff fails to state a negligence claim against G4S.</u>

The Amended Complaint further alleges a state law negligence claim against G4S under a theory of vicarious liability for the acts of its employees. As with the constitutional claim, details are lacking. As the Court put it: "Plaintiff's negligence claim suffers from the same conclusory allegations as the municipality claim." And like Plaintiff's municipal liability claim, the amendments to her complaint fail to establish that G4S either owed Ward a duty to protect her from injury or to use reasonable care to assure detainees, like her, were provided medical attention.  Plaintiff has failed to state a cognizable claim for negligence under Oklahoma law, and this action should be dismissed.

III. <u>Plaintiff fails to state a claim for relief against the individual members of the jail staff for alleged violations of Ward's Fourteenth Amendment Rights.</u>

As with Plaintiff's municipal liability claim, her claim against the individual members of the jail staff fails for want of specificity. The Amended Complaint contains, in most instances, general references to violations of Ward's constitutional rights, without explaining the specific involvement of each individual defendant.

Title 42 U.S.C. § 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013). As with any cause of action, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ], a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [ ]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The Amended Complaint contains only formulaic recitations of the elements of Plaintiff's cause of action, and, therefore, does not place the individual defendants on notice of the specific actions for which relief is now sought. For this reason, Plaintiff's claims against members of the jail staff fail as a matter of law.

   A. *Christa Kaler ("Kaler")*

Besides the general allegations of wrong-doing attributed to all defendants, Plaintiff alleges that on January 3, 2020, Kaler "started her shift and was notified of Ms. Ward's presence at the Jail. Sometime that morning, consistent with the policy and practice at the Jail, Kaler 'called court records and spoke with Lauren Baker to see if courts would add [Lawanda] onto the court docket due to her medical needs.'" [Dkt. 38, ¶ 25.] The complaint contains no other specific allegations attributable to Kaler. Thus, all that can be said of Kaler's involvement in Ward's death is that she attempted to expedite her processing through the legal system. This singular allegations is insufficient to support any claim against Kaler under any theory. The claim against Kaler should be dismissed.

   B. *Sarah Kessler ("Kessler")*

With respect to Kessler, Plaintiff alleges that on January 4, 2020, Kessler "reported

11

that Ward would complain how she 'couldn't breathe' repeatedly to Kessler and Defendants Forbes and Whitworth." [Dkt. 38, ¶ 29.] Nothing further is alleged specific to Kessler. The claim against Kessler should, therefore, be dismissed.

C. *Baleigh Napier ("Napier")*

With respect to Napier, Plaintiff alleges that on January 4, 2020, Napier "witnessed [Ward] attempting to get the attention of EMSA paramedics, who were in the female ward of the Jail for another inmate, by screaming 'Help! Help! EMSA, help me!' Defendant Napier's supervisor, Defendant Forbes, instructed Napier to take Ward back to her cell. Napier complied with this order and ignored the pleas of Ms. Ward." [Dkt. 38, ¶ 30.] Such an isolated incident does not give rise to liability by Napier. It is undoubtedly common for detainees to yell and make pleas to members of the public or visiting personnel, and the purported statements of Ward do not indicate the presence of a serious medical condition. Plaintiff's claim against Napier should be dismissed.

D. *Moises Izquierdo Santos ("Santos")*

Regarding Santos, Plaintiff alleges that during Ward's booking "[t]he arresting officer informed Defendant Izquierdo that EMSA had checked Ms. Ward at the scene of her arrest and indicated that her vital signs were normal at the time of her arrest." [Dkt. 38, ¶ 21.] Santos's sole involvement, therefore, is being informed by the arresting officer that medical personnel evaluated Ward before arrival and determined she was medically fit to be checked into the jail. There is no other apparent or alleged involvement from Santos regarding Ward. The claim against Santos should be dismissed for failure to state a claim.

E. *Matthew Willis ("Willis")*

Regarding Willis, Plaintiff alleges that from January 4, 2020 to January 6, 2020, Willis

"reported multiple instances of Ms. Ward asking for officers' attention, staring blankly after being asked a question, acting erratically in her cell, and refusing to eat. Not once did Willis attempt to inquire about Lawanda's medical state aside from asking 'if she was okay,' to which she would not respond." [Dkt. 38, ¶ 31.] By the allegation, Willis did inquire of Ward about her condition, to which he received no response. Such behavior by Ward is cryptic at best, such that it could be attributed to many different factors - and not necessarily a serious medical condition as alleged. Plaintiff's own allegations show that Willis did not act with deliberate indifference toward Ward. Rather, he exhibited a degree of care commensurate with the circumstances and actions of Ward. The claim against Willis should be dismissed.

*F.  J. Besson ("Besson")*

Regarding Besson, Plaintiff alleges that on January 3, 2020, Besson spoke with Lauren Baker with court records who stated "the judge determined that Ms. Ward 'would have to wait until her court date due to her charges.'" [Dkt. 38, ¶ 25.] Plaintiff further alleges that that same day:

> "[Besson] was "sitting at [their] post in control" when Lawanda continuously pushed the intercom button. According to Besson, they could hear Lawanda repeatedly yelling "help" from her cell. Through the intercom, Besson asked Lawanda what she needed, but she continued to yell for help and sit in front of her cell door. "After a while," according to Besson, she stopped, went to her bunk, and fell asleep. No further action was taken by Defendant Besson.

[Dkt. 38, ¶ 24.] As with Willis, above, Besson responded to the complaints of Ward and inquired as to her situation, to which no response was given. There is no indication from the allegation by Plaintiff that Ward was experiencing a serious medical episode.  Again, it is undoubtedly common for detainees to exhibit erratic behavior, and it would be impractical and burdensome on both jail staff and medical personnel to seek medical services any time detainees exhibited such behavior. The claim against Besson should be dismissed.

13

### G. B. Frederick ("Frederick")

Regarding Frederick, Plaintiff alleges that during Ward's booking Frederick "assisted Lawanda in completing a medical questionnaire. While she was completing it, the arresting officer informed Defendants Frederick and Okoduwa that Ms. Ward had apparently swallowed narcotics approximately two hours before her arrival at the Jail and that Ms. Ward was 'making every possible attempt not to come to jail.'" [Dkt. 38, ¶ 21.] During booking, jail staff was informed that EMSA personnel had evaluated Ward and found no issues of note. The allegation against Frederick neither indicates that Ward was suffering from an acute, severe medical episode nor that Frederick had any reason to believe she was suffering from the same. The arresting officer indicated Ward was essentially willing to do or say anything to avoid being booked into the jail. It is not alleged that Frederick's actions or inaction specifically resulted in Ward's death, and she did not pass away for another four days. The claim against Frederick should, therefore, be dismissed.

### H. E. Okoduwa ("Okoduwa")

Regarding Okoduwa, Plaintiff alleges that during Ward's booking "the arresting officer informed Defendants Frederick and Okoduwa that Ms. Ward had apparently swallowed narcotics approximately two hours before her arrival at the Jail and that Ms. Ward was 'making every possible attempt not to come to jail.'" [Dkt. 38, ¶ 21.] Plaintiff alleges further that "Ms. Ward informed Defendant Okoduwa she could barely walk or stand up straight, and that she wasn't feeling well and requested an assessment by a medical professional." [Dkt. 38, ¶ 22.] It was also during Ward's booking that jail staff was informed that she had been evaluated by EMSA medical personnel before arrival with no issues noted. In light of the arresting officer's statement that Ward was willing to do or say anything to avoid going to

14

jail and that there were no obvious signs she was suffering from a severe medical condition, Okoduwa's actions during Ward's booking do not rise to the level of deliberate indifference. The claim against Okoduwa should, therefore, be dismissed.

### I.  S. Whitworth ("Whitworth")

Regarding Whitworth, Plaintiff alleges that on January 4, 2020, Whitworth assisted Ward with calling her sister to request that her medications for her blood pressure and depression be delivered to the jail. [Dkt. 38, ¶ 27.] At this time, "Ward told Whitworth that she was a diabetic and had not taken her insulin in three (3) days." *Id.* Plaintiff further alleges that "Defendant Kessler reported that Ward would complain how she 'couldn't breathe' repeatedly to Kessler and Defendants Forbes and Whitworth." As with Plaintiff's allegations against other jail staff, there is no indication that Whitworth was ever witness to any behavior that amounted to a serious medical condition in Ward. Whitworth made certain Ward was able to contact her family to arrange the delivery of her medication for conditions unrelated to her death, which her family refused. The claim against Whitworth should, therefore, be dismissed.

## **CONCLUSION**

Defendants, G4S Secure Solutions (USA), Inc., Christa Kaler, Sarah Kessler, Baleigh Napier, Moises Izquierdo Santos, Matthew Willis, J. Besson, B. Frederick, E. Okoduwa, and S. Whitworth, respectfully request this Court dismiss Plaintiff's state and federal constitutional claims and negligence claim against them with prejudice to refiling under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

        Respectfully submitted,

By:    */s/ John H. Tucker*
      John H. Tucker, OBA No. 9110
      jtucker@rhodesokla.com
      Joseph E. Stall, OBA No. 32875
      jstall@rhodesokla.com
      RHODES HIERONYMUS JONES TUCKER & GABLE
      P.O. Box 21100
      Tulsa, Oklahoma 74121
      Telephone: (918) 582-1173
      Facsimile: (918) 592-3390
      *Attorney for Defendant, G4S Solutions (USA), Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September 2022, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

*Attorneys for Plaintiff:*

| | |
|---|---|
| Daniel E. Smolen | danielsmolen@ssrok.com |
| Robert M. Blakemore | bobblakemore@ssrok.com |
| 701 S. Cincinnati Ave. | |
| Tulsa, OK 74119 | |

*Attorneys for the City of Tulsa:*

| | |
|---|---|
| Kristina L. Gray | kgray@cityoftulsa.org |
| R. Lawson Vaughn | lvaughn@cityoftulsa.org |
| City of Tulsa, Oklahoma | |
| City Hall @ One Technology Center | |
| 175 E. Second Street, Suite 685 | |
| Tulsa, OK 74103 | |

        */s/ John H. Tucker*
        John H. Tucker